Counsel, you may proceed. Good morning. My name is Pierce Gore. I represent Appellant Natalia Bruton. I'd like to reserve two minutes for rebuttal. Just watch the court. May it please the court. First, the district court erred in granting summary judgment. Gerber's labels were deceptive because they contained illegal nutrient content claims that made Gerber's products appear superior to competitor products. Bruton testified that she purchased Gerber's products instead of less expensive, comparable Beach Hut products because Gerber's label claims appealed to her as a mother. Counsel, help me with this. I thought that there was no difference in labels of the various competitors. Is that wrong? There's a difference between Gerber's labels and Beach Hut's labels. What about the other products? Well, the focus here, obviously, is on Gerber's labels. Of course. Gerber's labels are the ones that contain the illegal nutrient content claims. I guess what I'm struggling with, we have, of course, the overall issue of what standard we adopt with respect to the assertability and administrative feasibility. The district court seemed to be refocused on the administrative feasibility aspect of this. Is it for 69 products in varying packages? She didn't see how whoever in the class could identify what he or she had purchased. How did she miss on that? Was that a miss, or what's wrong? That was a miss. This case is different because baby food is different. Ms. Bruton testified that she remembered each and every one of the 15 products that her daughter, Taylor, was willing to eat. She had her packages. She produced them all, took photographs of them, and photographs of all 15 products were included in the complaint. Mothers remember which foods their babies eat and which foods they don't, because the foods they don't eat, they spit out. And did she claim that she had read all the labels? She claimed that she read those labels. She at least looked at them at the time she made her purchases. She recalled exactly which 15 products she bought and when she bought them, because these foods were designated for babies under the age of two. So she clearly remembered every Gerber product that she bought. She did not take photos of each and every package that she purchased. So Gerber argues that it can evade class certification simply by changing its labels. As good as the one of our panelist recently heard a case called Briseño versus Conagra Foods, where the ascertainability issue and administrative feasibility issue was addressed, and they were deciding between the Third Circuit's strict approach or Seventh Circuit's more lenient approach. I gather you're in favor of the Seventh Circuit approach, right? You would be fine with Mullins. Okay. And in this case, do you believe that the appropriate thing for Markward to do is to defer submitting this case or at least ruling on it until a Briseño case comes in? Well, I think this panel could go ahead and rule, because in the Ninth Circuit, historically, there is no heightened ascertainability standard. There is no administrative procedure in small-dollar consumer class actions by which millions of class members can be identified before they ever submit a claim. So is this the very issue that's in front of the Briseño panel? It is. It is. We do have this policy of deferring to the first panel, which is the case submitted before. And we would be fine with that? We would. There is sufficient evidence of deception in this case, sufficient to overcome summary judgment, because a reasonable consumer would infer that if Beech-Nut could make the same claims as Gerber, it would. And given the fact that Gerber made the claims and Beech-Nut didn't, it was reasonable for Bruton to infer that Gerber's products met standards that Beech-Nut's products did not. Can I ask that as counsel, though, do you kind of struggle with this? I really do. Whichever standard gets it, though. I suppose in the Mullins case, though, the mom should buy it. Let's assume that the class is certified and you move forward. How do you litigate this? I mean, your plaintiff is an extraordinary mother. I have six children. I know a little bit about children. And, although I've never been a father, I know what baby food is, and I can't imagine a mother being so meticulous that she would look at every label on the baby food package. I mean, it's incredible to me. I'm not saying she didn't. I'm just saying it's incredible to me that she would pick Gerber or Beech-Nut to get that, but I don't get the microscopic exoneration. But it seems like unless somebody actually did see that, it's hard to see where there's an offense because you're talking about this label, this letter. If you don't read the label, how can you be misled? Well, in every small-dollar consumer transaction, you're going to have consumers who don't keep their seats. You're going to have consumers who don't have their packages. At the time the case is filed, you're going to have lots of consumers who don't photograph every package. The way it works, as Judge Fletcher noted at the September 12th hearing, people get the notice. It has to have an objective class definition, a specific product and a specific time period. Consumers read that notice, and they think to themselves, I either bought this or I didn't. They either file a claim or they don't. There is simply no evidence in this case or in any small-dollar consumer transaction that the court needs an administrative mechanism to identify those consumers before they file a claim. There is no evidence that Gerber's customers will lie under oath to recover a few dollars. I get that, and I view these primarily to help the legal community. The legal community does very well with it, but the reality is I just don't see how you can identify people with these kinds of products sufficiently to get them a warrant. I don't know how they do that. You just say, they shopped at this store, and I think I bought some of Gerber's. Is that what they say? In small-dollar consumer class actions, class members self-identify. That's how they're identified. And claims administrators have procedures for weeding out false claims. There's a tiny, tiny fracture of all claims submitted that turn out to be mistakes, duplicates, and claims administrators do that routinely. But there's no way and no need for the court to identify class members before claims are submitted. So in other words, as long as there is a feasible process, this is what the world of politics is like. You just sort it out later. That's essentially what we're talking about. That's right. The group presented, in addition to our own testimony, Gerber's labels, the applicable regulations, expert declarations, and FDA warning letters, including this one to Gerber, cited in our briefs. It's a label. It's an FDA warning letter from Gerber Carins. And the FDA said the product makes claims such as healthy, excellent source of vitamin A, no added sugar, which are not allowed on products intended for children under the age of two because appropriate dietary levels have not been established for children in this age range. The district court dismissed all of this evidence as anecdotal. But that's all there is. That's all you would ever be able to submit to overcome summary judgment. Why else is there a consumer survey? No. The district court acknowledged that plaintiffs need not submit consumer surveys. Judge Posner has already written about the value of consumer surveys prepared for litigation. So we gave the district. You have to have some sense of the consumer perception out there. And are you relying entirely on your expert for that? No. We're relying on Ms. Brinkman's extensive testimony at her deposition, which tracks self-testimony. She can't speak for the class. She can speak for herself, obviously. But how can she speak for the class? Because her testimony tracks the FDA warning letter. The FDA is the federal agency charged with enforcing the Federal Food, Drug, and Cosmetic Act, which California's Sherman Law is a mirror image of. So when the plaintiff's testimony, a class rep who is found to be adequate and typical, tracks the federal regulation, which in turn is identical to the California regulation, that, together with the labels, the experts, the regulations, that is sufficient evidence of consumer deception. Brinkman can also seek conjecture relief. At the time this case was before the district court, Gerber, at ER 322 through 323, said that it had discontinued the challenge labels on 11 of the 15 products included in Brinkman's class definition. So clearly, as to the four products on which it was still making the unlawful claims, an injunction relief would be appropriate. And an injunction would be appropriate as to the other 11 because Gerber's label changes were voluntary with no injunction in place. To this day, Gerber maintains that its labels are legal. There is nothing that would prevent Gerber from going back to making nutritional content claims on the labels of baby food. The district court also erred in dismissing Brinkman's unjustified claim. The district court held that it was duplicative of Ms. Brinkman's UCL claim and would provide an identical remedy. But the remedy for UCL violation is restitution. The remedy for unjust enrichment can include non-restitutionary disgorgement, which is not available under the UCL. A UCL claim is tried in court. An unjust enrichment claim is tried to a jury. The court, calculating restitution, could come up with a different number than a jury calculating disgorgement. But Britain is limited to either a UCL claim or an unjust enrichment claim. Business and Professions Code Section 17205 makes UCL remedies cumulative to all other remedies. So Britain's unjust enrichment claim isn't duplicative of a UCL claim. Unless the panel has questions, I'll reserve the remainder of my time. Thank you. Good morning. May it please the court. Brian Berryman for Gerber Products Company. These courts have affirmed the district court's order granting Gerber's motion to summary judgment for the reasons stated in Judge Koh's order. Mr. Mansfield, this is Jens. We've been looking at the cases of Gerberato v. Antonioni and Hartford Casual Insurance Company v. J.R. Marketing. Is opposing counsel correct that Judge Koh was in error in dismissing the unjust enrichment portion of the claim? Do we have the motion to dismiss these? Sure. Your Honor, Judge Koh found that the remedies sought in the quasi-contract claim were duplicative of the other relief being sought in the complaint at that point. And I think this case is different than Asciana in that that case was at the pleading stage and Judge Hamilton dismissed the entire case here. Most of the case and most of the costs of action went forward. Plaintiffs had the opportunity to seek that same relief in the case and wasn't able to do it until that certification stage and summary judgment stage. So the judge corrects the label. We're not talking about exactly the same delivery here, are we? Well, the relief you can seek under the remaining claims was the same depending on what theory the plaintiff put forward. Different theories at the class certification stage. We submitted ample law and evidence showing that none of those theories were adequate and Judge Koh chose to deny class certification on a different ground. Do you agree that if going forward versus going forward, that if you have different damages that meet on different parts of the system, a Joseph Richmond complaint should remain? If the case were abandoned, no, because the plaintiff had a chance to seek that same relief and wasn't able to and that relief was available under the remaining claims. So there's been no prejudice to the plaintiff through Judge Koh's ruling. Well, she overruled a Joseph Richmond. It's gone unless we overturn that. I guess my question would be is, are you saying if we were to remand on other grounds, then there would be an opportunity for the plaintiffs to amend their complaint and reclaim a Joseph Richmond? Is that what you're saying? No, Your Honor. That it's not appropriate in this case because the plaintiff had the opportunity to seek that relief under the different claims and was unable to. So from your perspective, that was just dead regardless of the two cases I mentioned? Yes, Your Honor. Okay. Counsel, on the class certification, do you agree with your opposing counsel that we should await the results of the procedural appeal? No, Your Honor. The facts in this case are completely different than received and there's no reason to believe this court can affirm Judge Koh's ruling denying the motion for class certification for both the reasons that Judge Koh denied class certification and on other grounds as well. The reasons that Judge Koh adopted and denied class certification, which Your Honor has mentioned some of them, apply not just to ascertainability, so the court doesn't have to wait and see how the procedural panel. But ascertainability is squarely raised in the procedural case, is it not? Yes, Your Honor. And it was the ground that Judge Koh chose to deny class certification. Is that why shouldn't we follow our own policy and defer to that panel which has the same issue? Because, well, two reasons, Your Honor. Because one, here, the court can deny, can affirm the ruling denying class certification on a number of other grounds that were raised in the lower court. And the facts in this case are very different than received them. For example, Your Honor's mentioned that here the plaintiff's tried to certify a class with 69 different types of baby food, Gerber Second Foods products during a period from May 2008 to the then present. Judge Koh correctly recognized that all of those products had had different labels on them during the proposed class period. Many of the labels during the proposed class period didn't contain any of the challenge statements. And some products even had seven different labels during the proposed class period. My counsel, with respect, I'm reading what Judge Koh said. I mean, she was in the weeds in the sense of administrating feasibility, but that's all part of the ascertainability standards, is it not? Well, it is, Your Honor. But it also can be looked at with respect to predominance and administrative manageability, which is a 23B3 standard. There are other ways to look at the same facts, which exist in this case. In Presido, it was one label, one statement during all maximums during the entire class period. From your perspective, the fact that we don't have clear law in our circuit on this particular issue is irrelevant because there are some parts of the ascertainability standard that would not have been dealt with by the Presidio and that would permit us to affirm Judge Koh on a different ground. Is that your perspective? Yes, Your Honor. And that's what this court did in Berger v. Lopeba. In that case, the district court judge had high-class certification based on the ascertainability. And the court looked at the facts, which are more similar to this case. In that case, there were five different types of contracts and other differences during the class period. And the court looked at it as a predominance issue. And then it footnoted the end of the opinion, noted we don't need to reach the threshold issue of ascertainability because we find that individual issues predominate over class issues. So the court can move forward with this case because there were a number of grounds on which the court presented to the district court which Judge Koh chose not to address. In addition to the different labels, there was no evidence of a class-wide method to calculate damages whatsoever and other grounds on which any basis for denying the class certification other than ascertainability, from your perspective, is sufficient for us to affirm Judge Koh's ruling on this issue? Yes, Your Honor. And there were a number of them that were put forward in the opposition that she chose not to address. And this court did the same thing in the Berger v. Lopeba case. Your Honor, I would like, if it's okay, to return to the summary judgment motion because I want to address some statements that counsel made in response to the court's questions. With respect to the summary judgment motion, under this court's decision in Clemens, the plaintiff had the burden to produce evidence showing that a significant portion of the consuming public authority acted reasonably would have been misstood. And as the Clemens court said, a few isolated examples are not enough. Here, the plaintiff produced no consumer survey or expert testimony. And that in and of itself is okay if you have something else. But here I note that the plaintiff's expert and Judge Koh noted this. Even the plaintiff's expert testified that the labels at issue here in the proposed class definition were accurate and not misleading. That is her position. Here, the plaintiff testified that even she didn't think the statements were untrue. There's ample testimony in the record that she said, I don't know. And she simply, what the plaintiff hangs her head on is one simple answer that's just repeated several times. And she simply made the conclusory statement at her deposition that she thought that her product was better than a comparable Beechnoe product. That's not enough. That's a conclusory statement. That's not evidence that a significant portion of the consuming public is likely to be deceived. That's a conclusory statement. And its evidence may be the most inadmissible of her individual decision, her reliance on her individual decision to buy a particular Gerber product instead of a Beechnoe product. The only evidence in the record is quite different. The evidence in the record from Gerber's expert is that Beechnoe made the same statements and the court did a look at the Beechnoe labels in the settlement of the metal neck service of record starting at page 239. They make the same statements. We also know they make the same statements because counsel mentioned the one letter that was sent to Gerber in February 2010 regarding certain products that were within the class definition. They made the same statement on the slavings. You're saying that they were essentially identical. Yes. They made the same types of statements. And that's starting at settlement of the metal neck service of record 239. And you know the FDA sent a similar letter to Beechnoe on the exact same day, February 22, 2010, about the same issues. So there's no dispute really. The only evidence in the record is they were both making the same statements. The Beechnoe, the letter the FDA sent to Beechnoe is in the record in supplemental excerpts of record 596 to 98. Gerber's letter is in these excerpts of record in 1556. The only evidence in the record is also that the Beechnoe products weren't available and most of the stores plaintiffs shopped at. And the Gerber products were in fact lower priced than the Beechnoe products. That's all in the declaration of Carroll Scott, starting in the supplemental excerpts of record at page 450. So the plaintiff has fallen far short of the clemency standard. She's given at most one bit of conclusory testimony about why she supposedly purchased a Gerber product over a Beechnoe product, which in fact is proven unreliable and incorrect by the actual evidence in the record. I'll also note with respect to the FDA letter that was mentioned, the letter to Gerber is interesting and different than most letters the FDA sends out because it doesn't say in the letters, the February 22 letter, yes, Your Honor, that's the only letter sent to Gerber. It doesn't say that Gerber's statements on its labels are false or misleading. That's not a letter anywhere. The label says that we question whether certain statements being underlinked comply with the FDCA. Well, they say there's misbranded within the meaning of section so-and-so because their labeling includes unauthorized nutrients and content claims. Right. And what the FDA was saying is not that those statements, for example, that there's a certain amount of a vitamin in the product or the product isn't healthy, especially, they're not saying those statements are not true or that they're misleading. They're saying that the FDA thinks that they, that those statements, violate the FDCA, the Drug and Cosmetic Act. And the FDA, when it thinks something is false or misleading, it says it. If you look at these letters, for example, in the Brazilian parole case that the Court mentioned, that was served the same day as the Presidio case, those letters said that the conduct was false or misleading. That's not what the FDA is saying. And then Gerber sent a detailed response to that letter within 15 days, as it's required to do by the FDA regulations. That response is the supplemental excerpts of Record 83-90, where it explained in detail why it thought it was complying with the regulations, and the FDA dropped the issue. And I just want to note also, this is in our brief, but FDA letters are considered to be informal and advisory. They're not binding on this Court. You're saying that when Gerber responded to the letter, the FDA dropped everything, right? That's right. They say, we're done with this in some way. They just didn't say anything further. They didn't say, the FDA didn't say anything further, and that's typically the way it works with the FDA. And that procedure is explained in the Declaration of Cheryl Cowan, which is in the record. So, in concluding, Your Honor, this Court can affirm the District Court's order granting summary judgment on the reasons stated in Judge Miller's order. There was insufficient evidence to kind of provide sufficient evidence to show the significant portion of the consumers acting reasonably would be misled. And this Court can affirm the District Court order's denial of certification under a number of Rule 23 elements, based on the evidence that Judge Koh, in fact, looked at and used to deny based on ascertainability. Usually the Judge Koh herself made her determination based upon reliance on things other than ascertainability. That you can rely upon from your perspective in determining whether or not you can disclose. It's not, as you said before, Your Honor, it's not in the order you can use those same facts that Judge Koh set forth in her order, applying them to the ascertainability of the illnesses. This Court can use those same facts to deny based on predominance. So, I just want to be sure, you're not saying that that's what she did. You're saying that we can take those same facts, make our own determination with respect to other aspects of the class certification, and come to the same conclusion. Yes, Your Honor, absolutely. There's no need to wait for a procedo, and that's exactly what this Court did in Berger. I think in that case, Judge Walter denied based on ascertainability. This Court affirmed based on predominance, and then noted in the footnote that it did not reach the threshold against ascertainability. Thank you, Your Honor. Mr. Corey, you have some reserve time. Thank you, Your Honor. The District Court denied class certification solely on ascertainability grounds. Although the District Court was simultaneously proceeding over other similar cases of ours, including a Brazil v. Dole that involved other class cert issues, including damages, calculations, the District Court, in this case, chose to take the ascertainability offering. From your perspective, since that's what the District Court relied upon, we've got to decide based upon the same issues that she was driving. We couldn't go to a different aspect. For a very specific reason that is different from Berger, because the law in these cases, including labeling cases, is evolving rapidly. It evolved considerably on September 30, when a different panel of the Ninth Circuit rejected our unlawful sale theory. And so on what case was that? That was Brazil v. Dole. And so on remand, in the wake of that ruling from the Ninth Circuit, we would proceed differently with respect to damages calculations. And as we had talked about earlier, you could calculate restitution based, perhaps, on the price difference between a beach and a Gerber, but you might calculate disgorgement differently based on Gerber's net profits from these parts. Even Gerber does argue that it's entitled to profit from the distribution of misbranded food. So for that reason, this panel should base its ruling on everything and only that which the District Court addressed with respect to class certification, and that was ascertainability. And the panel is right that that ruling is going to be determined by whatever the Ninth Circuit does on Brazil. Now, we're just asking questions. We haven't made any decisions yet, as I understand. Gerber is asking this panel to judicially draft a corollary under Rule 23, and that corollary would be that a company could avoid class certification simply by changing its labels. There were 15 products involved in this case, not 60-some-odd, but Gerber would move around small insignificant features on its labels from time to time to what ultimately confused Ms. Bruton at her deposition. She nonetheless remembered exactly which 15 products she bought. She remembered reading the labels. She remembered how significant Gerber's label claims were to her, and she remembered the time period in which she purchased those products at a minimum. No matter how this Court views ascertainability, this case should be remanded for a B-2 trial because even the Third Circuit doesn't require ascertainability with respect to a B-2 class. We'll ask the panel next question. There's no further questions. Thank you, Counsel. The case just argued will be submitted for a decision. The Court will hear argument.
judges: O'scannlain, Gould, M. Smith